UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OHIO STATE UNIVERSITY WEXNER MEDICAL CENTER, <br> 410 West Tenth Avenue <br> Columbus, OH 43210 <br><br> Plaintiff, <br><br> vs. <br><br> XAVIER BECERRA, <br> Secretary of the United States Department of Health and Human Services, 200 Independence Avenue, S.W., Room 700-E <br> Washington, D.C. 20201 <br><br> Defendant. | Case No.   1:23-cv-2039 |

**COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff sues Defendant, Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services (HHS) and seeks judicial review of the remand of its appeals before the Provider Reimbursement Review Board.

### I.   STATEMENT OF THE CASE

1. The Hospital relies heavily on the Disproportionate Share Hospital (DSH) payment adjustment created by Congress to provide critical health care services to the vulnerable populations it serves. To ensure it received all DSH payments to which it is entitled, the Hospital challenged whether inpatient hospital days for Medicare Part C beneficiaries should be part of the calculations for DSH adjustments.

2. During the administrative appeals, the Secretary issued 1739-R—which declared that the Board lacked jurisdiction over appeals like the Hospital's and ordered the Board to remand the appeals back to the Medicare Administrative Contractor (MAC) for recalculation of the challenged adjustments—cutting the appeals short and rendering

them moot. Centers for Medicare and Medicaid Services, CMS Ruling 1739-R (August 17, 2020), https://www.cms.gov/files/document/cms-1739-r.pdf. (Exhibit 1 – 1739-R).

3. In reliance on 1739-R, the Board remanded the Hospital's appeals to the MAC.

4. The Board's remand of a valid appeal based on 1739-R must be vacated as arbitrary and capricious and contrary to law. The remand violated the Medicare Act and the Administrative Procedure Act (APA) by throwing out the Hospital's rightful appeals of final Medicare payment determinations and implementing substantive payment policy changes without notice-and-comment rulemaking. The remand also violated the Fifth Amendment by ending the properly-filed appeals and providing no mechanism for judicial review of 1739-R or the issues properly presented by the Hospital's appeals.

5. The Hospital therefore requests that the Court issue an order:

- Vacating the Board's order—which complied with 1739-R—remanding and dismissing the Hospital's impacted appeals to the MAC;

- Reinstating the Hospital's appeals before the Board;

- Holding that 1739-R is not enforceable and any subsequent remands were improper;

- Vacating 1739-R;

- Alternatively, issuing a writ of mandamus ordering the Secretary to rescind 1739-R and reinstate the Hospital's appeals before the Board;

- Requiring the Secretary to recalculate the Hospital's DSH payments for the Fiscal Periods at issue as directed by *Allina* and to make prompt payment of any additional amounts due the Hospital plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2), 42 U.S.C. § 1395g(d), or both; and

- Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospital.

## II. JURISDICTION AND VENUE

6. This action arises under the Medicare Act, the APA, and the Constitution.

7. This Court has jurisdiction over the Hospital's claims under: 42 U.S.C. § 139500(f) (appeal of Medicare program agency final decision); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1361 (mandamus).

8. Venue is proper under 42 U.S.C. § 139500(f) and 28 U.S.C. § 1391(e).

## III. PARTIES

9. Ohio State University Wexner Medical Center, Medicare Provider No: 36-0085 (formerly known as Ohio State University Hospital), is a Medicare-participating, general acute care hospital provider in the federal Medicare program.

### A. FYE 2011

10. On June 23, 2021, the Hospital received from CGS its Notice of Amount of Program Reimbursement for fiscal year ending June 30, 2011. Exhibit 2, page 3.

11. On August 26, 2021—within the 180-day statutory period—the Hospital timely appealed its final determination. Exhibit 2. At that time, the Hospital's appeal only contemplated other issues.

12. On August 7, 2021, the Hospital received an acknowledgement assigning Board Case No. 21-1641. Exhibit 3.

13. On December 2, 2021, still within 180-days of receiving its Notice of Amount of Program Reimbursement, the Hospital added the issue of whether inpatient hospital days for Medicare Part C beneficiaries should be part of the calculations for DSH adjustments. Exhibit 4.

**B.     FYE 2012**

14.     On August 31, 2021, the Hospital received from CGS its Notice of Amount of Program Reimbursement for fiscal year ending June 30, 2012. Exhibit 5, page 7.

15.     On February 22, 2022—within the 180-day statutory period—the Hospital timely appealed its final determination. Exhibit 5.

16.     On February 23, 2022, the Hospital received an acknowledgement assigning Board Case No. 22-0846. Exhibit 6.

**C.     Remands**

17.     On May 17, 2023, the Board closed both of the Hospital's appeals and, under the purported authority of CMS Ruling 1739-R, remanded the cases back to the MAC. Exhibits 7 & 8.

18.     Secretary Becerra is the federal official responsible for the administration of the Medicare Program and delegated its administration to CMS.

## IV.     STATUTORY AND REGULATORY BACKGROUND

**A.     Qualification for Disproportionate Share Hospital Status**

19.     Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(1). Since 1983, the Medicare Program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system (PPS). 42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to payment adjustments. *Id*.

20.     A hospital that serves a disproportionate share of low-income patients qualifies for an upward percentage adjustment to the standard PPS rates. 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I),

4

(d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). As a proxy for the amount of low-income patients served by a hospital, the disproportionate patient percentage determines a hospital's qualification for the DSH payment adjustment, and determines the amount of their DSH adjustment. 42 U.S.C. §§ 1395ww(d)(5)(f)(iv), (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

21. The Medicare/SSI Fraction is the percentage of a hospital's inpatients entitled to Medicare Part A who are also entitled to Supplemental Security Income (SSI) benefits during their stay:

$$\frac{\textit{Medicare Part A/SSI Days}}{\textit{Total Medicare Part A Days}}$$

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The denominator counts all Medicare Part A days while the numerator only counts Part A days for patients who are also entitled to SSI benefits under Title XVI. CMS computes the Medicare Fraction for each federal fiscal year, and must use the fraction to compute a hospital's DSH payment adjustment for the cost reporting period beginning in the federal fiscal year. 42 C.F.R. § 412.106(b)(2)-(3).

22. The Medicaid Fraction is the percentage of a hospital's total days for inpatients "who were not entitled to benefits under [Medicare] Part A" but are "eligible for medical assistance" under a state plan during their stay:

$$\frac{\textit{Medicaid, Non-Medicare Part A Days}}{\textit{Total Patient Days}}$$

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The denominator of the Medicaid Fraction is the hospital's total inpatient days; the numerator is the hospital's number of inpatient days

5

caring for patients who were both eligible for medical assistance under Title XIX, or Medicaid, and "not entitled to benefits under part A" of Title XVIII, or Medicare. *Id.*

## B. Regulatory History of the Inclusion of Medicare Advantage Days in DSH Calculation

23. In addition to Medicare's original fee-for-service programs—Parts A and B—Part C provides beneficiaries the option to receive services from managed care entities known as Medicare Advantage programs. 42 U.S.C. § 1395mm.

24. That statute provides for "payment to an eligible organization under this section for individuals enrolled under this section with the organization and entitled to benefits under part A of this subchapter and enrolled under part B of this subchapter." 42 U.S.C. §1395mm(a)(5). Inpatient hospital days for Medicare beneficiaries enrolled in health maintenance organizations (HMOs) and competitive medical plans before 1999 are known as Medicare HMO patient care days. In the September 4, 1990 Federal Register, the Secretary of Health and Human Services stated that:

> Based on the language of section 1886(d)(5)(F)(vi) of the Act [42 U.S.C. § 1395wvv(d)(5)(F)(vi)], which states that the disproportionate share adjustment computation should include "patients who were entitled to benefits under Part A," we believe it is appropriate to include the days associated with Medicare patients who receive care at a qualified HMO. Prior to December 1, 1987, we were not able to isolate the days of care associated with Medicare patients in HMOs, and therefore, were unable to fold this number into the calculation [of the DSH adjustment]. However, as of December 1, 1987, a field was included on the Medicare Provider Analysis and Review (MEDPAR) file that allows us to isolate those HMO days that were associated with Medicare patients. Therefore, since that time we have been including HMO days in the SSI/Medicare percentage [of the DSH adjustment].

55 Fed. Reg. 35,990, 39,994 (September 4, 1990). Medicare Part A paid for HMO services and patients remained eligible for Part A.

6

**C.     Medicare Part C**

25.     With the creation of Medicare Part C, Medicare beneficiaries could opt out of their entitlement to benefits under Part A. Consistent with the statutory change, CMS did not include Medicare Part C days in the SSI ratios used by the intermediaries to calculate DSH payments for the FY 2001-2004. This added Medicare Advantage Days into the Medicaid Fraction's denominator and the numerator for patients who were also Medicaid eligible. In response to confusion from providers about the placement of Medicare Advantage Days within the DSH calculation, the Secretary proposed to clarify the policy for Medicare Advantage Days in the FFY 2004 Inpatient PPS Proposed Rule:

> once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage. These patient days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the M+C beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction.

68 Fed. Reg. 27,154, 27,208 (May 19, 2003). The Secretary noted no major financial impact associated with this proposal. *Id.* at 27,416. This proposal was not finalized.

26.     In the FFY 2005 Inpatient PPS Final Rule, the Secretary made a complete about-face and decided Medicare Advantage Days should be counted in the Medicare Fraction for DSH because "they are still, in some sense, entitled to benefits under Medicare Part A." 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). CMS incorporated this policy into the DSH regulation with no opportunity for hospitals to comment on the change of position. 42 C.F.R. § 412.106(b)(2).

27.     The 2005 policy change harmed hospitals that care for the medically indigent. Many Medicare Advantage patients do not receive SSI; thus, the change added

7

more days to the denominator than the numerator, reducing the SSI percentage and diluting the hospitals' payment.

28. Although the change in policy was finalized on August 11, 2004, no change in regulatory language was published until the FFY 2008 Inpatient PPS Final Rule. Three years later, the Secretary stated that no regulatory change had occurred and announced that the changes only made "technical corrections" to the regulatory language consistent with the change announced in the FFY 2005 Final Rule. As a result, Medicare Advantage days needed to be included in the Medicare Fraction as of October 1, 2004. In the Federal Register notice for the FFY 2008 Final Rule, the Secretary made these comments:

> In the FY 2005 IPPS final rule . . . we discussed in the preamble our policy change to reflect the inclusion of the days associated with . . . Medicare Advantage beneficiaries under Medicare Part C in the Medicare fraction of the DSH calculation. In that rule, we indicated that we were revising the regulation text . . . to incorporate this policy. However, we inadvertently did not make a change in the regulation text to conform to the preamble language. We also inadvertently did not propose to change § 412.106(b)(2)(iii) in the FY 2005 final rule, although we intended to do so. . . . We intended to amend the regulation text with respect to both the numerator and the denominator of the Medicare fraction of the Medicare DPP. Therefore, in this final rule with comment period, we are making this technical correction to § 412.106(b)(2)(i) and to § 412.106(b)(2)(iii) to make them consistent with the preamble language of the FY 2005 IPPS final rule and to effectuate the policy iterated in that rule.
>
> With respect to the technical correction that we are making to § 412.106(b)(2)(iii), we note that we ordinarily publish a notice of proposed rulemaking in the Federal Register to provide for a period for public comment before a provision such as this would take effect. However, we can waive this procedure if an agency finds good cause that a notice and comment procedure is impracticable, unnecessary, or contrary to the public interest and incorporates a statement of the finding and its reasons in the notice issued. We find it unnecessary to undertake notice and comment rulemaking in this instance for the additional change to § 412.106(b)(2)(iii) because this notice merely provides technical corrections to the regulations and does not make any substantive changes to the regulations or our existing policy. Therefore, under 5 U.S.C. § 533(b)(B), for good cause, we waive notice and comment procedures.

72 Fed. Reg. 47,130, 47,384 (August 22, 2007) (cleaned up).

### D. The Medicare Act's Notice-and-Comment Rulemaking requirement is independent of the APA's similar requirement

29. The Supreme Court held that the Medicare Act requires "notice and [a] 60-day comment period – for any 'rule, requirement, or other statement of policy … that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services … under [Medicare]." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019) (cleaned up).

30. Though similar to the APA's requirements, the Medicare Act's Notice-and-Comment requirement is broader and covers agency interpretive guidelines.

### E. Appealing to the Board

31. The Board is an administrative tribunal appointed by the Secretary. 42 U.S.C. § 139500(h). Each of the appointed members of the Board must be "knowledgeable in the field of payment to providers of services" under the Medicare program. *Id.*

32. A hospital has a statutory right to appeal to the Board if it is dissatisfied with a MAC's determination for the amount of Medicare payment due the hospital. 42 U.S.C. § 139500(a)(1)(A)(i).

33. A hospital may take an appeal to the Board individually or may pursue a group appeal of an issue that is common to two or more hospitals. 42 U.S.C. § 139500(a), (b); 42 C.F.R. §§ 405.1835 & 405.1837.

34. The amount in controversy for a group appeal to the Board must be at least $50,000 in the aggregate. 42 U.S.C. § 139500(b); 42 C.F.R. §§ 405.1835 & 405.1837.

## V.   FACTUAL BACKGROUND

### A.   Proposed Ruling: 1739-P

35. In August, the Secretary published *Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage*, a proposed rule (1739-P). 85 Fed. Reg. 47,723 (August 6, 2020).

36. Through 1739-P, the Secretary proposed retroactive rulemaking in response to the *Allina* litigation—thus placing the Part C Days in the Medicare Fraction of the DSH calculation dating back to FY 2004.

37. Such a policy as incorporated into 1739-P would remove any financial benefit associated with the Hospital's proper challenge of the Secretary's prior rulemaking that was invalidated in *Allina II*.

### B.   Implementation of Final Ruling 1739-R

38. CMS issued 1739-R eleven days after issuing 1739-P. CMS claims that 1739-R provides a framework for the MACs to "calculate the provider's [DSH] payment adjustment pursuant to the forthcoming final rule." Exhibit 1, page 2.

39. The Secretary applies 1739-R retroactively to appeals—including those already pending—that include the *Allina II* issue "regarding patient days with discharge dates before October 1, 2013 that arise from [NPRs] that are issued before CMS issues a new final rule to govern the treatment of patient days with discharge dates before October 1, 2013." (*Id.*)

40. Lacking "an appropriate basis for a new reopening of any final determination," 1739-R revoked the Hospital's appeal rights by terminating their pending appeal and effectively barring the MAC from issuing a recalculated payment that would allow the Hospital to reinitiate appeals on the "Part C days DSH issue." (*Id.* at 9).

10

41.     The Secretary's ruling is binding on the Board and it lacks any authority to assess the validity of the same. 42 C.F.R. § 405.1837.

## C.  The Board's Remand of Medicare and Medicaid Part C Days Appeals Under CMS Ruling 1739-R is Premature

42.     After the close of each fiscal year, a hospital must file a cost report with its designated MAC. 42 C.F.R. §§ 413.20 & 412.24.

43.     The MAC audited the Hospital's cost reports and issued NPRs informing the Hospital of the MAC's final determinations for the amount of reimbursement the Hospital would receive. 42 C.F.R. § 405.1803. The NPRs were final agency decisions. *Id*.

44.     The Hospital preserved its appeal rights under 42 U.S.C. § 1395oo to challenge the act of including Part C days in the Medicare Fractions of its DSH calculation.

45.     The Hospital timely filed its Board appeals challenging how inpatient hospital days should be counted for Medicare DSH payment purposes when the Medicare beneficiary was eligible for Medicare and enrolled in a Medicare Part C plan during the inpatient stay.

46.     The Board has now reversed course based on Ruling 1739-R. The Board closed Board Case Nos. 21-1641 and 22-0846, writing that the appeals included:

> a challenge to the inclusion of Medicare Part C days in the Medicare fraction of the disproportionate share ("DSH") percentage and/or the exclusion of Medicare Part C days for patients who are dually eligible for Medicaid from the Medicaid fraction of the DSH percentage, for patient discharges *before* October 1, 2013. This issue is governed by Centers for Medicare & Medicaid Services ("CMS") Ruling CMS-1739-R and, under the terms of this Ruling, the Provider Reimbursement Review Board ("Board") must remand this issue to the Medicare Contractor for calculation of the DSH payment adjustment in accordance with the forthcoming final rule CMS will issue "to govern the treatment of [Medicare Part C] patient days with discharge dates before October 1, 2013." *See also* 58 Fed. Reg. 47723 (Aug. 6, 2020).

11

Simultaneously, the Board noted that the Hospital "met the jurisdictional and procedural requirements under 42 U.S.C. § 1395oo, 42 C.F.R. Part 405, Subpart R, and Board Rules for the Medicare Part C Issue." Exhibits 7 & 8.

47. Any action under 1739-R was premature.

**D. The Secretary's Enactment of 1739-R is an Abuse of Discretion and Not in Accordance with Law**

48. The Medicare Act provides for judicial review of final actions by the Secretary. 42 U.S.C. §1395oo(f)(1).

49. The Hospital properly preserved its appeal rights. 42 U.S.C. § 1395oo(f)(1).

50. CMS rulings cannot strip the Hospital of the appeal rights granted by Congress. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 814 (D.C. Ct. App. 2001).

### VI. BASES OF APPEAL

#### Count I: Violation of the Medicare Act
#### (Hospital's Appeal Rights)

51. Plaintiff incorporates the allegations above as if set forth fully here.

52. The Hospital has a right to appeal to the Board a final payment determination made by the MAC and to obtain interest on any recovery ultimately received. 42 U.S.C. § 1395oo(f).

53. The Hospital satisfied all requirements for appeal under the Medicare Act.

54. The Board exercised jurisdiction over the Hospital and the issues on appeal.

55. Through 1739-R and the subsequent remands by the Board, the Secretary and CMS violated their nondiscretionary duty to permit the Hospital appeals for payment and interest as required under the Medicare Act.

56. By acting outside the law, the Secretary and the Board effectively revoked the Hospital's statutory rights to appeal.

57. By violating the Hospital's rights to appeal, the Secretary acted contrary to the law and violated the Medicare Act.

58. The Secretary's actions have harmed the Hospital, entitling it to relief.

### Count II: Violation of the Medicare Act
### (Notice-and-Comment Rulemaking)

59. Plaintiff incorporates the allegations above as if set forth fully here.

60. The Medicare Act requires the Secretary to subject any rules, requirements, or other policy statements that impact a provider's payment to Notice-and-Comment Rulemaking. 42 U.S.C. § 1395hh(a)(2); *Allina Health Servs.*, 139 S. Ct. at 1809.

61. Through CMS Ruling 1739-R, the Secretary sought to implement proposed rules, requirements, and other policies that impact the Hospital's reimbursement under the Medicare program.

62. 1739-R did not undergo Notice-and-Comment rulemaking as required by law.

63. The Secretary's actions have harmed the Hospital and it is entitled to relief.

### Count III: Violation of the APA

64. Plaintiff incorporates the allegations above as if set forth fully here.

65. The Secretary's ruling arbitrarily, capriciously, and in violation of the Medicare Act disrupted the Hospital's proper appeal and blocked the Hospital from its statutory right to appeal.

66. The Secretary's ruling violated the Medicare Act by implementing changes to rules, requirements, or other substantive statements of policy that impact provider reimbursement without Notice-and-Comment rulemaking. *See* 42 U.S.C. § 1395hh(a).

67. The Secretary acted contrary to the law and in violation of the APA by issuing 1739-R to enforce a proposed rule.

68. The Secretary's actions have harmed the Hospital and it is entitled to relief.

### Count IV: Mandamus

69. Plaintiff incorporates the allegations above as if set forth fully here.

70. The Hospital is entitled to a writ of mandamus prohibiting the Board from remanding its appeal to the MAC. 28 U.S.C. § 1361.

71. The Hospital has a right to appeal pursuant to the Medicare Act. The Hospital successfully preserved its rights to appeal the placement of Part C Days in the DSH payment calculation. The Hospital's appeals were thus properly before the Board. 42 U.S.C. § 1395oo.

72. The Secretary has a nondiscretionary duty to permit the Hospital to exercise its rights to appeal or otherwise comply with the law. 42 U.S.C. § 1395oo.

73. The Secretary's ruling violated that duty to permit the Hospital's appeals. In following 1739-R, the Board dismissed the Hospital's appeals—incorrectly asserting the appeals were moot under a proposed (not finalized) rule.

74. CMS rulings cannot strip the Hospital of its appeal rights or the duties imposed on the Secretary by Congress. *Monmouth Med. Ctr.*, 257 F.3d at 814.

75. The Secretary's ruling halted the Hospital's appeals, removing the Board's ability to adjudicate the appeals, and leaving no other adequate remedy.

76. Thus, the Hospital requests an order from this Court directing the Secretary to restore the Hospital's appeal.

### Count V: All Writs Act

77. Plaintiff incorporates the allegations above as if set forth fully here.

78. The Secretary violated the Medicare Act and APA by ordering the Board to remand the Hospital's appeals.

79. The All Writs Act provides that federal district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

80. This Court, having jurisdiction over this Complaint, should issue an order reversing the Board's remand of the Hospital's appeals under the Secretary's improper ruling.

## Count VI: Violation of Due Process

81. Plaintiff incorporates the allegations above as if set forth fully here.

82. The Hospital has a protected liberty or property interest in the reimbursement provided by CMS.

83. The Hospital is entitled to vindicate this right by appealing CMS's underpayments to the Board; the Hospital was pursuing this appeal right when the Secretary issued 1739-R disrupting the Hospital's right to appeal.

84. 1739-R thus deprived the Hospital of its appeal rights and constitutional rights to due process.

85. This constitutional violation is a question of federal law over which this Court has jurisdiction over. 28 U.S.C. § 1331.

### REQUEST FOR RELIEF

The Hospital thus requests an Order:

1. Vacating the Board's order—which complied with 1739-R—remanding and dismissing the Hospital's impacted appeals to the MAC;

2. Reinstating the Hospital's appeals before the Board;

3. Holding that 1739-R is not enforceable and any subsequent remands were improper;

4. Vacating 1739-R;

5. Alternatively, issuing a writ of mandamus ordering the Secretary to rescind 1739-R and reinstate the Hospital's appeals before the Board;

6. Requiring the Secretary to recalculate the Hospital's DSH payments for the Fiscal Periods at issue as directed by *Allina* and to make prompt payment of any additional amounts due the Hospital plus interest calculated in accordance with 42 U.S.C. § 139500(f)(2), 42 U.S.C. § 1395g(d), or both; and

7. Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospital.

    Respectfully submitted,

    HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

    By: /s/ *Andrew B. Howk*
    Andrew B. Howk, Attorney No. IN0005
    Ryan A. McDonald, Attorney No. IN0010
    500 North Meridian Street, Suite 400
    Indianapolis, IN  46204-1293
    Ph:  (317) 633-4884
    Email:   ahowk@hallrender.com
             rmcdonald@hallrender.com
    *Attorneys for Plaintiff*